UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARYANNE KELLER and TROY PARIS
individually and on behalf
of all others similarly situated,

        Plaintiffs,

    -v-                                      No.  12 Civ. 4565 (LTS)(RLE)

AXA EQUITABLE LIFE INSURANCE CO.
d/b/a AXA EQUITABLE,

        Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

      Plaintiffs Maryanne Keller and Troy Paris (together "Plaintiffs") bring this action

on behalf of themselves and all others similarly situated, asserting claims against defendant

AXA Equitable Life Insurance Company ("AXA") for failure to pay both straight-time and

overtime compensation in violation of provisions of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 206 et seq., and the New York Labor Law ("NYLL"), Article 6, §§ 190 et seq., and

Article 19, §§ 650 et seq., and 12 N.Y.C.R.R. §§ 142 et seq.  Plaintiffs seek both damages and an

injunction prohibiting AXA from violating the FLSA and NYLL in the future.

      The Court has jurisdiction of Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§

1331 and 1337, and it has jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. §§

1367 and 1332.

      Plaintiffs move for conditional certification of collective action treatment of their

FLSA claims pursuant to 29 U.S.C. § 216(b) and class certification of their state and local claims

pursuant to Federal Rule of Civil Procedure 23.  Plaintiffs also move to be named as Class

Representatives and for designation of their attorneys as Class Counsel.

The Court has thoroughly reviewed the submissions of the parties and, for the following reasons, Plaintiffs' motion is grant\ed in part and denied in part.

<u>BACKGROUND</u>

The following summary of background facts material to the class certification motions is drawn from the Second Amended Complaint and the parties' evidentiary submissions in connection with the motions.  The facts set forth below are undisputed except as otherwise noted.

AXA specializes in life insurance, annuities, and related financial services. Plaintiffs and other similarly situated individuals were employed by AXA as Customer Service Representatives ("CSR").  The CSRs serviced AXA's Mutual of New York and Mutual Life of America (collectively "MONY") lines of business.  Plaintiffs worked at AXA's Syracuse Life Operations Contact Center (the "SLOCC") responding to customer inquiries over the telephone. They allege that AXA failed to pay them between ten and thirty minutes per day in straight-time or overtime compensation in violation of the FLSA and or the NYLL.  The CSRs are non-exempt employees of AXA who are eligible to receive overtime pay.

Plaintiffs seek certification under Federal Rule of Civil Procedure 23 of a class consisting of all CSRs who worked in the SLOCC at any time from six years preceding the June 11, 2012, filing date of this action and conditional certification pursuant to the FLSA of a collective class consisting of all CSRs who worked in the SLOCC servicing MONY policies at any time from three years preceding the commencement of this action.  Prior to July 7, 2008, such CSRs worked a scheduled 36.25 hour week, so any claims for unpaid compensation for that period is for straight-time rates and arises only under the NYLL.  After July 7, 2008, such CSRs

were scheduled for 40-hour weeks, so the claim for uncompensated time is at overtime rates and

is covered by both the NYLL and the FLSA.  The SLOCC employs at least forty-eight CSRs.

Pursuant to a stipulation with AXA, Plaintiffs filed a Second Amended Complaint which

included claims for straight-time on July 9, 2013.

      AXA employed a uniform policy for CSRs at the SLOCC in terms of recording

time worked and reporting unreported time.  The SLOCC employed the Avaya telephone

system--a "hard" telephone system--from the beginning of the relevant period until the system

was phased out from 2009 through 2011 in favor of Cisco's Info Avenue telephone system.

When using the Avaya system, the CSRs began recording time worked by "auxing in" to the

telephone system, a process that required the CSR to enter a four digit pass-code and then hit

another button.  Ms. Keller testified that this process took her about ten seconds.  (Keller Tr.

95:25-96:13.)

      The Avenue system was a so-called "soft" telephone in that calls were routed

through a CSR's computer.  It required the CSRs to log into the computer and open a particular

application in order to begin recording their time.  Ms. Keller testified that this process took no

more than 90 seconds.  (Keller Tr. 124:3-6.)  The CSRs were required to use a variety of

computer programs during CSRs' phone calls with AXA's customers.  Plaintiffs allege that, as a

matter of AXA policy, CSRs were required to initiate each of these computer programs prior to

logging into the Avenue "soft" telephone system.

      Plaintiffs allege that, "as a matter of policy and training, AXA did not permit

CSRs to 'aux in' to AXA's telephone system until we were logged into all of the computer

programs."  (Keller Decl. ¶ 27; see also Paris Decl. ¶ 18.)  Plaintiffs allege that the process of

initiating these programs generally required them to spend ten minutes, as they serially initiated

each program to avoid "freezing" the computers.  (Keller Decl. ¶¶ 21, 23, 25; Hayes Decl. ¶¶ 21, 23, 25.)  When asked how often it was that she experienced a computer freeze, Ms. Keller testified that "I don't recall.  It wasn't that often that my computer, I mean, freezed [sic]." (Keller Tr. 109:2-3.)  Plaintiffs allege that they were required to open up all programs prior to receiving calls.  (Keller Decl. ¶¶ 20-27; Hayes Decl. ¶¶ 20-27; Paris Decl. ¶¶ 18-24.)  Plaintiffs further allege that, because they could potentially receive calls once they "auxed in" or logged into Avenue, they had to be logged into all programs to be ready to aid customers.  (Id.)  CSRs were authorized to "aux in" or log into the Avenue telephone system no more than five minutes prior to their designated shift time even though, according to Plaintiffs, it could take ten minutes to ready their computers.  (Keller Decl. ¶ 21; Paris Decl. ¶ 24.)

AXA asserts that its written policies require CSRs to start the computer programs during their shift.  (Wood Decl. ¶¶ 12, 16.)  AXA denies that: 1) CSRs were required start all programs before "auxing in" or logging in to the Avenue system, (Wood Tr. 59:19-20); 2) the programs had to be initiated serially to avoid computer "freezes," (Wood Tr. 59:19-20); and 3) launching the computer programs required ten minutes (Wood Tr. 58:2-11).

At the end of a shift, CSRs were required to "aux out" or sign out of the Avenue system.  This step would end the automatic reporting of their time worked.  Plaintiffs allege that they were required to follow a six-step process to log off of Avenue.  (Keller Decl. ¶ 33.) Plaintiffs allege that they were only paid for time worked between "auxing in" and the end of their assigned shift, regardless of whether a call required the CSR to stay beyond the end of their shift.  (Keller Decl. ¶ 42; Hayes Decl. ¶ 42; Paris Decl. ¶ 35.)  Plaintiffs further allege that, as a matter of policy, AXA required CSRs to remain on the phone after their shift ended if a customer call was ongoing.  (Keller Decl. ¶ 32.)  Morever, Plaintiffs allege that they were

required to carry out certain tasks after their shift ended, such as sending facsimiles and letters to clients that could take up to twenty minutes after a shift ended.  (Keller Decl. ¶ 35.)  Plaintiffs also allege that, after "auxing out," CSRs were required to shut down their computer systems, which required anywhere from five minutes to twenty minutes.  (<u>Compare</u> Keller Decl. ¶  36 <u>with</u> Paris Decl. ¶ 29.)  Ms. Keller acknowledged, however, that she could begin the program shutdown process before her shift ended: "I'm not going to wait all the time until 4:30.  So at 4:25 I start looking at my email, okay.  What do I need to do? Okay.  That's all done.  There's [sic] some things I might want to log out early that I don't need . . . ."  (Keller Tr. 134:24-135:4.)

Plaintiffs allege that, as a result of these AXA policies, they were routinely not paid for periods worked before "auxing in" and after their assigned shift ended.

AXA issued an Employee Handbook, which was available to CSRs via an internal intranet.  (Keller Tr. 211:9-14.)  The Employee Handbook stated that "all non-exempt employees -- regardless of grade or salary -- are eligible for additional pay at straight-time rates up to 40 hours and overtime pay at time and one-half for work in excess of 40 hours per week . . . . " (Davis Decl. Ex. 10.)

AXA provided CSRs with forms for reporting time worked but not reported, captioned the "Employee Daily Time Tracking Form," that CSRs were to submit to management.  (Davis Decl. ¶ 18 and Ex. 16.)  In addition, management at the Contact Centers repeatedly e-mailed employees, including Ms. Keller,  to remind them to file an Employee Daily Time Tracking Form for overtime they worked.  (Davis Decl. ¶¶ 19-21, Exs. 17-19.)  Ms. Keller understood that she could apply for overtime for time spent working before or after her shift, and she did so on several occasions.  (<u>See</u> Davis Decl. Exs. 18, 20, 21, 22.)  Ms. Keller does not allege that she was ever denied an overtime request.  Nor do Plaintiffs allege that they were ever

instructed not to file overtime requests for time worked.  However, she alleges that a supervisor

informed her that time initiating programs before "auxing in" was not eligible paid time.

(Glatter Reply Decl. Ex. V at 197:10-198:17.)  Mr. Paris did not ever apply for overtime.  He

suggested that believed that he did not have sufficient seniority to earn overtime.  (Paris Tr.

113:11; 133:24.)  Mr. Paris acknowledged that no supervisor ever told him that he could not

receive overtime. (Paris Tr. 116:25-117:5.)  Of the three CSRs who filed declarations in this

case, none reports having filed a claim for overtime and been denied payment, or having been

told they could not file for overtime.  (See Keller Decl.; Paris Decl.; Hayes Decl.)  Nor have any

CSRs testified that they informed AXA management that they could not complete the tasks

required of them during their regular shifts.  (Id.)

## DISCUSSION

Plaintiffs seek both conditional certification of a collective action under the FLSA

and class certification of their NYLL claims under Federal Rule of Civil Procedure 23.

Conditional FLSA Certification

Section 16(b) of the FLSA authorizes private parties to bring overtime claims

"[o]n behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).

Plaintiffs claim that AXA established policies designed to cause non-exempt CRS employees to

work overtime without being paid for that time as required under the FLSA.  See 29 U.S.C. §

207(a)(1).

In determining whether to certify an FLSA collective action to facilitate notice to

other potential plaintiffs, the court makes an initial assessment as to whether there are potential

opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to the claim

asserted under the FLSA.  See Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).

Plaintiffs need make only a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Id.  While the "modest factual showing" may not be satisfied by unsupported assertions, it is a low standard of proof, as the "purpose of [the] first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Id.; see also Morales v. Plantworks, Inc., No. 05 Civ. 2349, 2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006) (courts apply a lenient standard for conditional certification of a collective action).  "In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims." Pippins v. KPMG LLP, No. 11 Civ. 0377, 2012 WL 19379, at *6 (S.D.N.Y. Jan 3, 2012).

        "Courts do not require a named plaintiff to show an actual FLSA violation, but rather that a factual nexus exists between the plaintiffs situation and the situation of other potential plaintiffs." Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 386 (E.D.N.Y. 2010) (quoting Gayle v. Harry's Nurses Registry, Inc., No. 07 Civ. 4672, 2009 WL 605790, at *10 (E.D.N.Y. Mar. 9, 2009)).  The allegation that non-exempt employees use the same formal time-keeping system, that is compliant with FLSA, is insufficient evidence to demonstrate that plaintiffs are similarly situated for the purposes of an FLSA collective action. Zivali v. AT & T Mobility, LLC, 784 F. Supp. 2d 456, 463 (S.D.N.Y. 2011).  To certify a class despite an FLSA compliant time-keeping policy, plaintiffs must show that the informal practices of which they "complain are sufficiently uniform and pervasive as to warrant class treatment." Zivali, 784 F. Supp. 2d at 463 (citing Basco v. Wal-Mart Stores, Inc., Civ. 00-3184, 2004 WL 1497709, at *7 (E.D. La. July 2, 2004)).

        "The FLSA permits an employer to establish reasonable procedures for employees to report overtime, and to require employees to follow those procedures." Joza v.

WW JFK LLC, No. 07 Civ. 4153, 2010 WL 3619551, at *10 & n .5 (E.D.N.Y. Sept. 10, 2010)

(citing McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1130 (10th Cir. 1998)).  However, an

FLSA compliant reporting policy cannot cure a violation "once it is established that an employer

has knowledge of a worker's overtime activities and that those activities constitute work under

the Act" simply because employees voluntarily did not report their time.  See Chao v. Gotham

Registry, Inc., 514 F.3d 280, 290 (2d Cir. 2008).

    It is undisputed that AXA employs a policy for recording overtime that is facially

compliant with FLSA and NYLL rules.  Plaintiffs argue, however, that AXA also imposes

informal policies at SLOCC that bar CSRs from reporting overtime for certain types of activities

performed.  Plaintiffs have identified an alleged policy that might cause each CSR to work

unrecorded overtime -- that is, the policy of automatically recording only time between "auxing

in" and the end of a CSR's shift.  Specifically, Plaintiffs alleged that AXA's policy was for

CSRs to initiate certain applications prior to beginning their shifts, and to complete tasks,

including logging out of programs, after their shift.  Plaintiff Keller further alleges that she was

informed by a supervisor that time spent in such activities was not compensable.

    Notwithstanding conclusory statements in their declarations, Plaintiffs have

proffered no evidence that AXA failed to pay any CSRs overtime for additional tasks, such as

mailing or faxing clients letters, or for telephone calls that exceeded the length of their shifts.  In

fact, AXA produced evidence that Ms. Keller did file for overtime for time she worked

following her shift and that, each time she did, that request was approved by AXA management.

Mr. Paris, despite asserting that he believed he worked overtime prior to or after his scheduled

shift, failed to report such overtime even once, does not allege that any AXA employee ever told

him he was ineligible for overtime, and testified that he has no specific recollections regarding

overtime or eligibility thereof.

The Court finds the record sufficient to demonstrate only that Plaintiff Keller has shown that she is similarly situated for conditional class certification purposes to CSRs who were allegedly uncompensated for time spent logging into their computers prior to "auxing in" to the telephone system due to the alleged informal policy baring overtime filing for this time. Plaintiffs' motion for conditional collective class certification pursuant to 29 U.S.C. § 216(b) will therefore be granted to that limited extent.

Rule 23 Class Certification

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Capital, Inc., 546 F.3d 196, 203 (2d Cir. 2008)  A putative class plaintiff must "affirmatively demonstrate" by a preponderance of the evidence that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2552 (2011); Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010); Fed. R. Civ. P. 23(a).  The court's review of the Rule 23(a) requirements may require analysis of the merits of the underlying claim, Dukes, 131 S. Ct. at 2551; however, a court "should not assess any aspect of the merits unrelated to a Rule 23 requirement," In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).

Once a court has determined that a plaintiff has met its burden under the Rule

23(a) prerequisites, it must determine whether the requisites of a relevant subdivision of Rule 23(b) are met.  Where, as here, plaintiffs seek certification under Rule 23(b)(3), the court must determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Here, the Plaintiffs have failed to show commonality and typicality sufficient to warrant certification of a class.  "The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. at 158 n. 13; see also Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  "What matters to class certification . . . is not the raising of common questions . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Dukes, 131 S. Ct. at 2551.

"While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions."  In re Vivendi Universal, S.A., 242 F.R.D. 76, 84–85 (S.D.N.Y. 2007).  This requirement is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  In re Parmalat Sec. Litig., 04 MD 1653, 2008 WL 3895539, at *5 (S.D.N.Y. Aug. 21, 2008).  However, "[t]ypicality does not . . . require that the representatives' claims be identical to those of the class members,"  Trief v. Dun & Bradstreet Corp., 144 F.R.D.

193, 200 (S.D.N.Y. 1992), and so is "not defeated by minor variations in the fact patterns of

individual class member's claims."  Abdul-Malik v. Coombe, No. 96 Civ. 1021, 1996 WL

706914, at *3 (S.D.N.Y. Dec. 6, 1996).  "So long as the disputed issue of law or fact occupies

essentially the same degree of centrality to the named plaintiff's claim as to that of other

members in the proposed class," typicality is present.  In re Omnicom Grp., Inc. Sec. Litig., 02

Civ. 4483, 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007).

   AXA argues that Dukes' focus on the existence of a common question, the

resolution of which is material on a classwide basis, effectively bars certification in this case

because, despite the existence of common questions, there are no common answers that could

resolve this dispute.  See 131 S. Ct. at 2565.  AXA avers that the vagaries of each CSR's work

customs raise unique issues regarding the adequacy of overtime and straight-time compensation.

In Dukes, the Supreme Court noted that for a class to be certified, there must be some "glue"

holding the common questions with a common answers that the court may find to resolve the

case.  131 S. Ct. at 2553.

   Here, Plaintiffs have failed to demonstrate a uniform policy or practice allegedly

violative of the labor law--the "glue"--that if found to violate the NYLL would "drive the

resolution of the litigation" for the class.  See Dukes, 131 S. Ct. at 2551.  While Ms. Keller has

asserted that her experience was that logging into and signing out of numerous programs

required work outside of the allocated shift hours, even she acknowledged that her own practices

varied and that some procedures were completed very quickly or may not have been necessary

every shift.  She also acknowledged that other employees had different start up routines.

Furthermore, her testimony attributed the specific statements regarding the alleged informal

policy of discouraging overtime requests for the aux in/out time only to her supervisor.

Furthermore, it is unclear whether other CSRs believed they had to initiate programs serially.  Ms. Keller noted that she believed if she did not initiate programs serially, her computer would malfunction.  However, when asked how many times Ms. Keller's computer froze as a result of initiating programs, she hesitantly admitted it had not happened very often saying, "I don't recall.  It wasn't that often that my computer, I mean, freezed [sic]."  There is no evidence of any instruction from AXA management that this process was necessary, and AXA has asserts that it was not.  Plaintiffs' testimony was also contradictory with respect to whether and how many programs were required to be initiated prior to "auxing in" to the phone system.  It is not clear based on Plaintiffs' testimony that all CSRs even required additional time to initiate the computer programs.

Plaintiffs' testimony was also inconsistent with respect to the process of logging out of their computers.  For example, in his Declaration, Mr. Paris testified that logging out of the applications required of him fifteen to twenty minutes; however, at his deposition he acknowledged that it required him only to "go to the X in the right hand upper right-hand corner" to "X out all the programs" for the eight to ten programs he remembered using.  Ms. Keller agreed that the process simply required her to "X out" of each program.  Ms. Keller also noted that she would log out of any programs she was not using before the end of her shift, noting:

> I'm not going to wait all the time until 4:30.  So at 4:25 I start looking at my email, okay.  What do I need to do? Okay.  That's all done.  There's [sic] some things I might want to log out early that I don't need . . . .

Based on this testimony, the court finds that the issue of whether and to what extent the alleged policy resulted in violations of the New York Labor Law is one as to which individualized questions predominate.

The likely difficulties in managing class-based litigation of Plaintiffs' claims preclude the necessary finding that common questions predominate over questions affecting only individual class members; the class action is not superior for this purpose to litigation of individual claims.

C<small>ONCLUSION</small>

The Court hereby certifies Plaintiff Keller pursuant to 29 U.S.C. 216(b) conditionally as Representative of a collective consisting of all CSRs who worked at the SLOCC location on MONY-related matters at any time on or after June 11, 2009, and who claim to have spent pre- and/or post-shift time logging into or out of AXA's computer system for which they were denied compensation.  Plaintiffs' motion for class certification and collective action is denied in all other respects.  This Order resolves docket entry no. 24.

The Pretrial Conference currently scheduled for December 13, 2013, at 9:30 a.m. is adjourned until January 22, 2014, at 4:30 p.m.  The parties are directed to submit to the Court a joint, proposed notice of collective action no later than January 10, 2014.

SO ORDERED.

Dated: New York, New York
      December 12, 2013

                         /S
                        LAURA TAYLOR SWAIN
                        United States District Judge